UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| FRED ELKINS and HELEN ELKINS,  )<br>)<br>Plaintiffs,  )<br>)<br>) CIVIL ACTION<br>v.                                          ) NO. 3:09-cv-11595-WGY-HTS<br>)<br>R.J. REYNOLDS TOBACCO COMPANY,  )<br>individually and as successor by )<br>merger to the BROWN & WILLIAMSON )<br>TOBACCO CORPORATION and the      )<br>AMERICAN TOBACCO COMPANY;        )<br>and LORILLARD TOBACCO COMPANY,   )<br>)<br>Defendants.  ) | |

MEMORANDUM

YOUNG, D.J.                                                November 4, 2014

I.  **INTRODUCTION**

This is an <u>Engle</u> progeny action in which plaintiffs Fred and Helen Elkins (respectively, "Mr. Elkins" and "Mrs. Elkins"; collectively, "the Elkinses") seek compensatory and punitive damages for injuries allegedly caused by Mr. Elkins' addiction to cigarettes manufactured by defendants R.J. Reynolds Tobacco Company and Lorillard Tobacco Company (collectively, the "Defendants"). Specifically, this Court addresses whether Florida's statute of limitations bars Mrs. Elkins' claim for

1

loss of consortium.  The Defendants contend that Mrs. Elkins' claim for loss of consortium began to accrue as early as the mid-1980s, or at the very latest 1991, while Mrs. Elkins contends the claim did not begin to accrue until 2008, when she and her husband filed this action.

For the reasons detailed below, this Court **GRANTED** the Defendants' motion for summary judgment at a motion hearing on December 19, 2013.

A.   **Procedural History**

This action arises from the Florida Supreme Court's decision in Engle v. Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006).  The Elkinses' case was activated as part of a fourth "wave" of Engle progeny cases pending in the Middle District of Florida and was set for trial beginning in January 2014.  See Endorsed Order, Nov. 27, 2013, ECF No. 36.  The Elkinses filed an Amended Complaint on August 22, 2013, alleging that, "[a]s a direct, legal, and proximate result of Defendants' wrongful conduct, [Mrs. Elkins] has suffered and continues to suffer the loss of support, service, love, companionship, affection, society, intimate relations, and consortium of her beloved husband."  Am. Compl. 44, ECF No. 4.

The Defendants filed the instant motion for summary judgment on Mrs. Elkins' claim for loss of consortium on November 1, 2013, contending that Mrs. Elkins' claims are barred

by Florida's four-year statute of limitations.[1] Defs.' Mot. Summ. J. Pl. Helen Elkins' Claim Loss Consortium ("Defs.' Mot.") 1, ECF No. 19. Mrs. Elkins filed a response on November 20, 2013, Pl. Helen Elkins's Resp. Opp'n Defs.' Mot. Summ. J. Loss Consortium Claims ("Pl.'s Resp."), ECF No. 27, and the Defendants filed a reply two days later, Defs.' Reply Mem. Further Support Mot. Summ. J. Pl. Helen Elkins' Claim Loss Consortium ("Defs.' Reply"), ECF No. 32. A hearing on the motion for summary judgment was held on December 19, 2013, at which time this Court granted the Defendants' motion. Min. Entry, Dec. 19, 2013, ECF No. 62.

### B. Facts

The sole issue presented by the Defendants' motion is whether Mrs. Elkins' claim is timely. The facts surrounding Mr. Elkins' chronic obstructive pulmonary disease (COPD) diagnosis

---

[1] The defendants also argue that allowing such a claim to proceed would essentially expand the Engle class, thereby violating the Defendants' due process rights because they would not have been on notice to defend against these claims. Defs.' Mot. 11. Because summary judgment is proper on the merits of the statute of limitations issue, this memorandum does not address this additional argument further.

Additionally, the defendants make a noteworthy argument about the logistical and practical implications of simultaneously trying an Engle claim with a non-Engle claim, suggesting that a joint trial would be too prejudicial. See Defs.' Reply 2 n.2. The defendants are likely correct; Mr. Elkins, if he could prove class membership, would be entitled to the benefit of Engle findings while Mrs. Elkins would not, resulting in the possibility of prejudice or, at the very least, jury confusion.

are not materially disputed for the purposes of the instant motion, and both parties present evidence of the effects of that diagnosis on Mrs. Elkins.

On his Fact Worksheet completed in this case, Mr. Elkins stated that, as a result of his COPD, he cannot perform many of the routine tasks or enjoy many of the daily activities he was formerly able to, and that he had to retire early because he "didn't have enough breath to continue" working. Defs.' Reply, Ex. B, Plaintiff's Fact Worksheet ("Mr. Elkins' Fact Worksheet") 5, 7, ECF No. 32-2. Mr. Elkins also described the general nature of his wife's loss and the way it affected their marriage: "My wife has to take care of many of the [daily] tasks I used to take care of. It's hard on her and there's a great deal of stress and worry in our marriage because of my illness." Id. at 7. On September 19, 2013, Mr. Elkins said in a videotaped deposition that he first experienced frequent coughing in December 1984 and that he stopped smoking in 1984 or 1985, in part because he "started laying awake at night coughing and spitting up and all," adding that he would "cough half the night . . . just cough and cough and cough" and cough up phlegm. Defs.' Reply, Ex. C, Videotaped Dep. Fred Paul Elkins ("Mr. Elkins' Dep.") 215, 222-23, ECF No. 32-3.

4

Mr. Elkins then revealed during his deposition that he was first diagnosed with COPD in 1991 and, relevant to his wife's claim for loss of consortium, stated the following:

> Q: When you were diagnosed, say, from 1991 to '94, the first three years of your diagnosis, I want to talk about that period.
> Were there any activities that you were prevented from doing because of the symptoms associated with your COPD?
> A: Oh, yes, lots of things I couldn't do. I couldn't do, like, anything -- physical work around the home. I couldn't -- and for instance, I couldn't get out and play with my grandchildren because I run out of breath. I couldn't do that.
> Q: What type of physical work were you not able to do around the home?
> A: Well, I mean, there's like -- any -- a lot of repair stuff. If it takes physical work, I couldn't do it.
> Q: Can you give me an example?
> A: Well, changing - painting a room, for instance, I can't do that no more, and stuff like that.
> Q: What -- if you could not -- for example, if a room needed painting and you were not able to do it, how would you take care of that?
> A: My wife or -- well, my son would help.
> Q: Did your -- the symptoms associated with your COPD affect your ability to do your job?
> A: Oh, yes.

Id. at 305-06. He also testified that he has been hospitalized six times since 1990, and that between approximately 1998 and 2013 he suffered from sleep apnea, which caused him to stop breathing throughout the night and resulted in his wife having to "shake [him] sometimes to get [him] to breathe." See id. at 262, 267-68.

5

During a videotaped deposition in September 2013, Mrs. Elkins testified that she has not been able to be "intimate" with her husband as the result of his COPD. Pl.'s Resp., Ex. B, Videotaped Dep. Helen Elkins ("Mrs. Elkins' Dep.") 127, ECF No, 27-2. Mrs. Elkins also indicated that, just following his COPD diagnosis, Mr. Elkins could still normally perform household chores and share intimate moments with her. Id. at 127-28. Mrs. Elkins revealed, however, that her husband's COPD progressively affected their ability to have sexual relations, culminating in the complete cessation of intimacy around 2008. Id. at 128.[2]

Finally, Fred Scott Elkins, the Elkinses' son, testified that, as the result of his father's respiratory conditions, he noticed a change in his father's stamina as well as his ability to perform certain kinds of work and to enjoy routine tasks like shopping and playing with his grandchildren. See Defs.' Reply, Ex. E, Dep. Fred Scott Elkins 202-03, ECF No. 32-5. Discussing

---

[2] Q: Am I correct that when he was first diagnosed with COPD, were you still able to maintain intimacy?
A: Yes.
Q: And did there come a time when the intimacy level changed in some way?
A: Yes.
Q: And did it change in the frequency?
A: Yes.
Q: And how did it change over time with his COPD?
A: It stopped.
Q: And when did it stop?
A: Probably five years ago. About five years ago.
Mrs. Elkins' Dep. 128.

6

his mother, he said that the deterioration in his father's condition:

> [W]orries her that he'll have an attack, a breathing difficulty and pass out in the car or something. And so it's stressful with her constantly.
> And she tries to do more. If he can't -- if he -- if he is in one of these situations where he can't catch his breath, she'll try to help him up, and she's not able to do that. She can't -- she can't help him get up out of the chair and stuff like that.
> So it's been -- I'm sure it's been a lot, a lot on her.

Id.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "For factual issues to be considered genuine, they must have a real basis in the record," Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996); accordingly, "[m]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion," Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The evidence and all reasonable

7

inferences must be viewed in the light most favorable to the non-moving party, and summary judgment is appropriate only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co., Ltd.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

### B. Florida Statute of Limitations and Accrual of Causes

For personal injury claims similar to those underlying Mr. Elkins' claims, Florida's statute of limitations bars claims filed more than four years after the cause of action began to accrue. <u>See</u> Fla. Stat. § 95.11(3). When a loss of consortium claim is linked to such a personal injury claim, the limitations period on the consortium claim is four years as well. <u>See, e.g.</u>, <u>Lathrop</u> v. <u>Dillard's, Inc.</u>, No. 3:08-cv-212/RS/MD, 2008 WL 5111299, at *1 (N.D. Fla. Dec. 4, 2008). <u>Engle</u>, however, creates an exception to this rule for some plaintiffs: in that case, the Florida Supreme Court granted an additional one year from the date of that decision for plaintiffs within the <u>Engle</u> class to file individual claims, even if the statute of limitations for those claims would have already run otherwise. 945 So. 2d at 1277.

"A cause of action accrues under Florida law the moment the injured party or a reasonable person in the injured party's situation knew or should have known that the acts complained of

8

caused damage." Florida Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1519 (11th Cir. 1996). Florida employs a "long-standing rule generally applicable to personal injury claims under which 'the cause of action accrues and the statute begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained have been ascertained.'" Larson & Larson, P.A. v. TSE Indus., Inc., 22 So. 3d 36, 42 (Fla. 2009) (quoting Seaboard Air Line R.R. Co. v. Ford, 92 So. 2d 160, 164 (Fla. 1956) (on reh'g)). These accrual principles apply to loss of consortium claims. See, e.g., Tremblay v. Carter, 390 So. 2d 816, 817 (Fla. 2d DCA 1980).

C. **Loss of Consortium Claims in Engle Progeny Cases**

The original Engle class consisted of "[a]ll United States citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." Engle, 945 So. 2d at 1256. Following an interlocutory appeal, the Florida Third District Court of Appeals narrowed the class definition to include only Florida citizens and residents. Id.

Florida state courts have determined that spouses of injured smokers are not Engle class members. See, e.g, In re Engle, 3:09-cv-10000-WGY-JBT ("Master Docket"), Defs.' Mot.

9

Dismiss Consortium Claims Dependent Previously-Dismissed Personal Injury Actions, Ex. F, <u>Ruffo</u> v. <u>R.J. Reynolds Tobacco Co.</u>, Apr. 30, 2012 Fla. 11th DCA Order Defs.' Mot. Summ. J. ¶ 9, ECF No. 1012-6. This Court has previously addressed loss of consortium claims like the one filed by Elkins and reached the same conclusion, which was memorialized in a prior order:

> In the Court's view, <u>Ruffo</u> accurately reflects Florida law. . . . [S]pouses and family members of smokers with separate loss of consortium claims were not members of the <u>Engle</u> class. Moreover, under Florida law, the Plaintiffs' loss of consortium claims are indeed separate and distinct causes of action from the claims of injured smokers that could have been filed separately. Because they were not included in the <u>Engle</u> case and are distinct claims, tolling by the <u>Engle</u> savings period does not apply to save the Plaintiffs' loss of consortium claims.

Master Docket, Aug. 16, 2013 Mem. & Order 6-7, ECF No. 1130 (footnote and citations omitted). In accordance with this order, the Court has granted a similar motion for summary judgment on statute of limitations grounds for a loss of consortium claim in <u>Chamberlain</u> v. <u>R.J. Reynolds Tobacco</u>, another Engle progeny case. <u>See</u> 3:09-cv-10809-WGY-HTS, Sept. 9, 2013 Order 3, ECF No. 165.

    D.   **Application to Mrs. Elkins' Claim**

This Court has stated that, in addressing <u>Engle</u> progeny cases, it would carry forward "with a strong emphasis on the 'law of the case' and a proper invocation of the doctrines of issue and claim preclusion," thus avoiding relitigation of

10

matters that have already been resolved in Engle claims. Master Docket, Aug. 1, 2013 Mem. & Order 2, ECF No. 1120. Applying these principles to the instant motion, the Court's prior determination that spouses asserting loss of consortium claims are not Engle plaintiffs for purposes of entitlement to Engle tolling governs the resolution of this motion. Thus, Mrs. Elkins is not a member of the Engle class able to take advantage of the one-year grace period for filing new actions, and accordingly, her claim for loss of consortium is untimely.

As Mrs. Elkins herself identifies, Florida law provides that loss of consortium claims encompass:

> [C]ompanionship and fellowship of husband and wife and the right of each to the company, cooperation and aid of the other in every conjugal relation. Consortium means much more than mere sexual relation and consists, also, of that affection, solace, comfort, companionship, conjugal life, fellowship, society and assistance so necessary to a successful marriage.

Pl.'s Resp. 4 (quoting Gates v. Foley, 247 So. 2d 40, 43 (Fla. 1971)).

That the Elkinses were not able to be sexually intimate beginning in 2008 is not disputed. The record, however, reveals that their marital relationship was otherwise affected much earlier; in this case, undisputed testimony reveals that Mrs. Elkins began experiencing a loss of consortium at least as early as 1991.

11

Mr. Elkins' Fact Worksheet revealed that his wife's loss of consortium claim arose from the "great deal of stress and worry" in their marriage resulting from his illness, Mr. Elkins' Fact Worksheet 7; deposition testimony revealed that this condition began as early as the mid-1980s, particularly when Mr. Elkins started to cough heavily during the night, Mr. Elkins' Dep. 222. Undisputed testimony also reveals that Mr. Elkins quit working in 1991 as a direct result of his COPD, Mr. Elkins' Fact Worksheet 5, and his condition progressively worsened until he was no longer able to do many of the things he previously could. Mr. Elkins' Dep. 305-06. In fact, in response to a question specifically addressing the first three years following his COPD diagnosis in 1991, Mr. Elkins testified that he already could not do routine housework or play with his grandchildren. Id. at 305. Moreover, Mr. Elkins testified that he has been hospitalized six times since the 1990s, with the first time occurring in 1991. Id. at 262, 266. Florida courts have determined that evidence of hospitalization alone can support a loss of consortium claim. See, e.g., Christopher v. Bonifay, 577 So. 2d 617, 618 (Fla. 1st DCA 1991).

The ultimate inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at

12

251-52. Upon review of the entire record, including evidence of the effects of Mr. Elkins' COPD on his marriage, the Court finds no genuine issue of material fact regarding the effects of Mr. Elkins' COPD on his marriage with Mrs. Elkins. Applying the law to these undisputed facts, then, the Court finds that Mrs. Elkins' loss of consortium began to accrue more than four years before the filing of the instant action and is thus time-barred.

### III. CONCLUSION

For the aforementioned reasons, this Court previously **GRANTED** the Defendants' motion for summary judgment, ECF No. 19.

/s/ William G. Young
WILLIAM G. YOUNG[3]
DISTRICT JUDGE

---

[3] Of the District of Massachusetts, sitting by designation.